## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **ELECTRONIC PRIVACY INFORMATION CENTER,** | ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. _____ |
| | ) | |
| **DEPARTMENT OF JUSTICE,** | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## COMPLAINT FOR INJUNCTIVE RELIEF

1.  This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.  Plaintiff seeks injunctive and other appropriate relief for the expedited processing and release of agency records requested by plaintiff from the Federal Bureau of Investigation, a component of defendant Department of Justice.

### Jurisdiction and Venue

2.  This Court has both subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 5 U.S.C. §§ 552(a)(4)(B) and 552(a)(6)(E)(iii).  This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331.  Venue lies in this district under 5 U.S.C. § 552(a)(4)(B).

### Parties

3.  Plaintiff Electronic Privacy Information Center ("EPIC") is a public interest research organization incorporated as a not-for-profit corporation in Washington, DC.  EPIC's activities include the review of federal law enforcement activities and policies to determine their possible impacts on civil liberties and privacy interests.  Among its other

activities, EPIC publishes books, reports and a bi-weekly electronic newsletter.  EPIC

also maintains a heavily-visited site on the World Wide Web (www.epic.org) containing

extensive information on privacy issues, including information EPIC has obtained from

federal agencies under the FOIA.

4.  Defendant Department of Justice ("DOJ") is a Department of the Executive

Branch of the United States Government.  DOJ is an "agency" within the meaning of 5

U.S.C. § 552(f). The Federal Bureau of Investigation ("FBI") is a component within

defendant DOJ.

<u>**Aviation Security and the Government's Development of<br>Passenger Prescreening Programs**</u>

5.  Following the terrorist attacks of September 11, 2001, the President signed the

Aviation and Transportation Security Act ("ATSA"), Pub. L. No. 107-71.  The ATSA

created the Transportation Security Administration ("TSA") within the Department of

Transportation and, *inter alia*, transferred to TSA the duties and responsibilities set forth

in Chapter 449 of Title 49, United States Code, relating to civil aviation security.  Those

duties and responsibilities include "screening of all passengers."  49 U.S.C. § 44901

(2004).

6.  On November 25, 2002, the President signed the Homeland Security Act

("HSA"), Pub. L. No. 107-296.  The HSA created the Department of Homeland Security

("DHS") and, *inter alia*, transferred the functions of TSA to DHS.  6 U.S.C. § 203

(2004).  As part of its responsibilities relating to the screening of airline passengers, TSA

began developing in early 2002 the Computer Assisted Passenger Prescreening System

("CAPPS II").  TSA described CAPPS II as "an enhanced system to confirm the

identities of passengers and to identify foreign terrorists or persons with terrorist

connections before they can board U.S. aircraft."

7.  From the beginning of CAPPS II's development, controversy surrounded the

implications the system would have for personal privacy, which received a great deal of

attention from the news media and Congress.  In July 2004, TSA abandoned its plans for

CAPPS II, largely due to privacy concerns.

8.  On September 24, 2004, TSA published a notice in the Federal Register

announcing its intent to test Secure Flight, a new passenger prescreening system, along

with plans for ensuring passenger privacy within the program.  The notice explained that

"Secure Flight will involve the comparison of information for domestic flights to names

in the Terrorist Screening Database (TSDB) maintained by the Terrorist Screening Center

(TSC), to include the expanded TSA No-Fly and Selectee Lists, in order to identify

individuals known or reasonably suspected to be engaged in terrorist activity."  The

notice invited public comment on Secure Flight, which must be received by October 25,

2004.

### Plaintiff's FOIA Request and
### Request for Expedited Processing

9.  On September 30, 2004, plaintiff wrote to the FBI and requested under

the FOIA agency records concerning the Terrorist Screening Database ("TSDB"),

which is administered by the FBI.

10.  Plaintiff requested expedited processing of its request and explained the

urgency of disseminating information about the use of the TSDB within Secure Flight to

the public.  Plaintiff stated:

The FBI is responsible for maintaining the TSC and TSDB, and the agency's comparison of passenger data with information maintained in the TSDB raises serious questions about how the FBI will implement privacy safeguards and address the privacy concerns raised by its involvement in Secure Flight . . .

Because public comments on the program must be submitted by October 25, there is a particular urgency for the public to obtain information about how this new passenger screening system will function, as well as how the TSDB will operate within the program.

11.   In support of this assertion, plaintiff quoted editorials from the Baltimore Sun and Atlanta Journal Constitution raising questions about the privacy implications of Secure Flight and how the government will provide redress if the program wrongfully keeps individuals off airplanes.

12.   Plaintiff also demonstrated the considerable news media attention concerning that the FBI's role in the Secure Flight program has drawn from the media.

13.   Specifically, plaintiff referred to, and attached a copy of, the first page of search results from Google News concerning the FBI and its role in Secure Flight.  The search results consisted of 213 articles from newspapers across the country.

14.   In support of its assertion that it is "primarily engaged in disseminating information" for expedited processing purposes, plaintiff addressed its news collection and dissemination activities:

EPIC is a non-profit, educational organization that routinely and systematically disseminates information to the public.  This is accomplished through several means.  First, EPIC maintains a heavily visited Web site (www.epic.org) that highlights the "latest news" concerning privacy and civil liberties issues.  The site also features scanned images of documents EPIC obtains under the FOIA.  Second, EPIC publishes a bi-weekly electronic newsletter that is distributed to over 15,000 readers, many of whom report on technology issues for major news outlets.  The newsletter reports on relevant policy developments of a timely nature (hence the bi-weekly publication schedule).  It has been published continuously since 1996, and an archive of past issues is

available at our Web site.  Finally, EPIC publishes and distributes printed books that address a broad range of privacy, civil liberties and technology issues.  A list of EPIC publications is available at our web site.

15.  Plaintiff further supported its assertion that it is "primarily engaged in disseminating information" within the meaning of DOJ regulations and the FOIA by noting that:

> the U.S. District Court for the District of Columbia has specifically held that EPIC is "primarily engaged in disseminating information" for the purposes of expedited processing, *American Civil Liberties Union v. Department of Justice*, 321 F. Supp. 2d 24, 29 n.5 (D.D.C. 2004), and is a "representative of the news media" for fee waiver purposes, *Electronic Privacy Information Center v. Department of Defense*, 241 F. Supp. 2d 5 (D.D.C. 2003).

<u>**The FBI's Denial of Plaintiff's Request**</u>
<u>**for Expedited Processing**</u>

16.  By letter dated October 1, 2004, the FBI denied plaintiff's request for expedited processing.

17.  To justify its denial of expedited processing, the FBI stated, "[b]ased on the information you have provided, I cannot find that there is a particular urgency to inform the public about an actual or alleged federal government activity beyond the public's right to know about government activity generally."

18.  The FBI further stated, "the primary activity of the American Civil Liberties Union [sic] is not information dissemination, which is required for a requester to qualify for expedited processing under this standard."

19.  Plaintiff has exhausted the applicable administrative remedies.

20.  Plaintiff is entitled to expedited processing of its FOIA request under the standards set forth in defendant DOJ's regulations.

21.  The FBI, a component of the DOJ, has wrongfully withheld the requested records from plaintiff.

## CAUSE OF ACTION

### Violation of the Freedom of Information Act for Failure to Grant Request for Expedited Processing

22.  Plaintiff repeats and realleges paragraphs 1-21.

23.  The FBI's failure to grant plaintiff's request for expedited processing violates the FOIA, 5 U.S.C. § 552(a)(6) (E)(i), and defendant DOJ's own regulations promulgated thereunder, 28 C.F.R. § 16.5(d)(1)(ii).

### Requested Relief

WHEREFORE, plaintiff prays that this Court:

A. order defendant DOJ (and its relevant components) to process immediately the requested records in their entirety;

B. order defendant DOJ (and its relevant components), upon completion of such expedited processing, to disclose the requested records in their entirety and make copies available to plaintiff;

C. provide for expeditious proceedings in this action;

D. award plaintiff its costs and reasonable attorneys fees incurred in this action;

E. issue a written finding that the circumstances surrounding the agency actions challenged in this case raise questions whether agency personnel acted arbitrarily or capriciously; and

F. grant such other relief as the Court may deem just and proper.

Respectfully submitted,


_____
MARCIA HOFMANN
D.C. Bar. No. 484136

DAVID L. SOBEL
D.C. Bar No. 360418

MARC ROTENBERG
D.C. Bar. No. 422825

ELECTRONIC PRIVACY INFORMATION
CENTER
1718 Connecticut Avenue, N.W.
Suite 200
Washington, DC 20009
(202) 483-1140

Counsel for Plaintiff