**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **ELECTRONIC PRIVACY INFORMATION CENTER,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. _____ |
| | ) | |
| **DEPARTMENT OF JUSTICE,** | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND A PRELIMINARY INJUNCTION

Pursuant to Fed. R. Civ. P. 65, plaintiff Electronic Privacy Information Center respectfully moves for entry of a temporary restraining order ("TRO") and a preliminary injection to enjoin defendant Department of Justice's unlawful attempt to impede plaintiff's efforts to obtain agency records concerning the Terrorist Screening Database and its use within the new passenger prescreening system, Secure Flight, under development by the Transportation Security Administration. Plaintiff seeks an order requiring defendant to expedite the processing of plaintiff's Freedom of Information Act request for records concerning the Terrorist Screening Database in the manner required by defendant's regulations.

The grounds for this motion are set forth in the accompanying memorandum of points and authorities and proposed order. Pursuant to Local Rule 65.1(d), plaintiff requests a hearing on its application for a TRO at the Court's earliest convenience.

Respectfully submitted,

_____
MARCIA HOFMANN
D.C. Bar No. 484136

DAVID L. SOBEL
D.C. Bar No. 360418

MARC ROTENBERG
D.C. Bar No. 422825

ELECTRONIC PRIVACY INFORMATION
        CENTER
1718 Connecticut Avenue, N.W.
Suite 200
Washington, DC 20009
(202) 483-1140

Counsel for Plaintiff

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **ELECTRONIC PRIVACY INFORMATION CENTER,** ) | |
| ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. _____ |
| ) | |
| **DEPARTMENT OF JUSTICE,** ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR A
TEMPORARY RESTRAINING ORDER AND A PRELIMINARY INJUNCTION**

Plaintiff Electronic Privacy Information Center ("EPIC") respectfully submits this

memorandum of points and authorities in support of its motion for a preliminary

injunction.

**Preliminary Statement**

This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. §

552, seeking the expedited processing and release of agency records concerning the

maintenance of the Terrorist Screening Database by the Federal Bureau of Investigation

("FBI"), and the use of that database in Secure Flight, a new passenger prescreening

system under development by the Transportation Security Administration ("TSA").

There has been widespread media interest in this issue, and editorials and news articles

have raised serious questions about the privacy implications such activity.  As such, the

requested information fits squarely within the narrow category for which Congress has

mandated expedited processing.

In violation of the provisions contained in the FOIA and defendant Department of

Justice's ("DOJ") own regulations, the FBI has denied plaintiff's request for expedited

processing of the requested records.  The FBI's refusal to grant plaintiff's request is

substantively flawed.  Because time is at the essence of plaintiff's rights and the FBI's

obligations, plaintiff seeks the Court's expedited, *de novo* consideration of this matter and

entry of an order compelling defendant DOJ to process and disclose the requested records

immediately.

## Statement of Facts

### A.  Aviation Security and the Government's Development of Passenger Prescreening Programs

Following the terrorist attacks of September 11, 2001, the President signed the

Aviation and Transportation Security Act ("ATSA"), Pub. L. No. 107-71.  The ATSA

created the TSA within the Department of Transportation and, *inter alia*, transferred to

TSA the duties and responsibilities set forth in Chapter 449 of Title 49, United States

Code, relating to civil aviation security.  Those duties and responsibilities include

"screening of all passengers."  49 U.S.C. § 44901 (2004).

On November 25, 2002, the President signed the Homeland Security Act

("HSA"), Pub. L. No. 107-296.  The HSA created the Department of Homeland Security

("DHS") and, *inter alia*, transferred the functions of TSA to DHS.  6 U.S.C. § 203

(2004).  As part of its responsibilities relating to the screening of airline passengers, TSA

began developing in early 2002 the Computer Assisted Passenger Prescreening System

("CAPPS II").  Robert O'Harrow Jr.*, Air Security Focusing on Flier Screening*, the

Washington Post, Sept. 4, 2002, at A1.  In a press release titled "TSA's CAPPS II Gives

Equal Weight to Privacy, Security," and issued on March 11, 2003, TSA described

CAPPS II as "an enhanced system to confirm the identities of passengers and to identify

foreign terrorists or persons with terrorist connections before they can board U.S.

aircraft." From the beginning of CAPPS II's development, controversy surrounded the

implications the system would have for personal privacy, which received a great deal of

attention from the news media and Congress.[1]  In July 2004, TSA abandoned its plans for

CAPPS II, largely due to privacy concerns.  *See* Mimi Hall and Barbara DeLollis, *Plan to*

*Collect Flier Data Canceled*, USA Today, July 15, 2004, at 1A.

On September 24, 2004, TSA published a notice in the Federal Register

announcing its intent to test Secure Flight, a new passenger prescreening system, along

---

[1] *See, e.g.*, Byron Okada and Diane Smith, *Travelers Face New Screening at Airports*, Fort Worth Star Telegram, Dec. 1, 2002, at 1; Leslie Miller, *Feds Testing Air Passengers Check System*, Associated Press, Feb. 27, 2003; Joe Sharkey, *A Safer Sky or Welcome to Flight 1984?*, New York Times, March 11, 2003, at C9; Press Release, Office of Senator Ron Wyden, Wyden Wins Commerce Committee Approval to Require Oversight of CAPPS II Airline Passenger Screening System (Mar. 13, 2003); Editorial, *Safe Skies*, Washington Post, Mar. 21, 2003, at A12; Audrey Hudson, *Hill Assumes Oversight Role on Airline Screening*, Washington Times, May 10, 2003, at A02; Margie Boule, *"No-Fly List" Problems May Multiply With New System*, The Oregonian, June 19, 2003, at E01; Sara Kehaulani Goo, *TSA May Try to Force Airlines to Share Data*, Washington Post, Sept. 27, 2003, at A11; Jeffrey Leib, *Passengers Will Have to Give More Info*, Denver Post, Sept. 28, 2003, at A03; Alexandra Marks, *Passenger Tracking at Airports on Hold*, Christian Science Monitor, Oct. 21, 2003, at 02; Sean Holstege, *Air Security Grounded: Government Struggles to Launch Screening System*, Oakland Tribune (CA), Oct. 26, 2003; David Armstrong, *The Color of Safety*, San Francisco Chronicle, Nov. 6, 2003, at B1; Shaun Waterman, *U.S., EU Reach Passenger Data Deal*, United Press International, Dec. 16, 2003; Paul Marks, *Screening System Stirs Concerns of Misuse*, Hartford Courant, Jan. 17, 2004, at A1; Jon Hilkevitch, *GAO Report Critical of Profiling System for Airline Safety*, Chicago Tribune, Feb. 13, 2004, at C1; Press Release, Office of Senator Patrick Leahy, Reaction of Senator Leahy to GAO's Report on Flaws in the CAPPS II Program (Feb. 13, 2004); Anastasia Ustinova, *Airport Screen Plan Has Tough Day on the Hill*, Philadelphia Inquirer, Mar. 18, 2004, at A10; Editorial, *Airport Screening System More Minus Than Plus*, Atlanta Journal Constitution, Mar. 25, 2004, at 14A; Press Release, Senate Governmental Affairs Committee, Senators Collins, Lieberman Ask TSA: What Other Airlines Have Been Contacted and Asked for Passenger Information? (Apr. 14, 2004); Ricardo Alonso-Zaldivar, *Facing Privacy Questions About Privacy Issues, the Government Will Try to Redesign a Computer System to Identify Suspected Terrorists*, Los Angeles Times, July 17, 2004, at A20; Editorial, *Protecting Privacy*, Baltimore Sun, July 18, 2004, at 4C.

with plans for ensuring passenger privacy within the program.  System of Records

Notice, Secure Flight Test Records, 69 Fed. Reg. 57345 (Sept. 24, 2004) (attached to

Declaration of Marcia Hofmann ("Hofmann Decl.") as Exhibit 1).  The notice explained

that "Secure Flight will involve the comparison of information for domestic flights to

names in the Terrorist Screening Database (TSDB) maintained by the Terrorist Screening

Center (TSC), to include the expanded TSA No-Fly and Selectee Lists, in order to

identify individuals known or reasonably suspected to be engaged in terrorist activity."

*Id*. at 57345.  The notice invited public comments on the test phase of Secure Flight,

which must be submitted to TSA by October 25, 2004.  *Id*. at 57345.  The Washington

Post has reported that the new program "still will rely on key elements of the earlier,

controversial program." Robert O'Harrow Jr., *Airport Screening System Touted as

Improvement*, Washington Post, Aug. 27, 2004, at E03.

### B. Plaintiff's FOIA Request and Request for Expedited Processing

On September 30, 2004, plaintiff wrote to the FBI and requested under the FOIA

agency records concerning the Terrorist Screening Database ("TSDB").  Exhibit 2

(attached to Hofmann Decl.).  Plaintiff stated TSA had on September 24, 2004 published

a System of Records notice in the Federal Register announcing the test phase of Secure

Flight, which outlined the agency's plans for protecting the privacy of passengers

affected by the program.  *Id*. at 2.  Plaintiff said that the notice stated that Secure Flight

will compare passenger information to names in the TSDB, which will include the

expanded TSA watch lists.  *Id*.  Plaintiff also explained that public comments on the test

phase of Secure Flight must be submitted to TSA by October 25, 2004.  *Id*.

Plaintiff requested expedited processing of its request and explained the urgency

of disseminating information about the use of the TSDB within Secure Flight to the

public.  Plaintiff stated:

> The FBI is responsible for maintaining the TSC and TSDB, and the
> agency's comparison of passenger data with information maintained in the
> TSDB raises serious questions about how the FBI will implement privacy
> safeguards and address the privacy concerns raised by its involvement in
> Secure Flight . . .
>
> Because public comments on the program must be submitted by October
> 25, there is a particular urgency for the public to obtain information about
> how this new passenger screening system will function, as well as how the
> TSDB will operate within the program.

*Id*.  In support of this assertion, Plaintiff quoted editorials from the Baltimore Sun and

Atlanta Journal Constitution raising questions about the privacy implications of Secure

Flight and how the government will provide redress if the program wrongfully keeps

individuals off airplanes.  *Id*. at 2.

Plaintiff also demonstrated the considerable news media attention the FBI's role

in the Secure Flight program has drawn from the media.  Specifically, plaintiff referred

to, and attached a copy of, the first page of search results from Google News concerning

the FBI and its involvment in Secure Flight.[2]  *Id*. at 5.  The search results consisted of 213

articles from newspapers across the country.  *Id*.

In support of its assertion that it is "primarily engaged in disseminating

information" for expedited processing purposes, plaintiff addressed its news collection

and dissemination activities:

---

[2] Google News results include only articles published thirty days prior to a search.  For
information about how Google News operates, see Google News, *Frequently Asked
Questions*, http://news.google.com/intl/en_us/about_google_news.html (last visited Oct.
6, 2004).

> EPIC is a non-profit, educational organization that routinely and
> systematically disseminates information to the public.  This is
> accomplished through several means.  First, EPIC maintains a heavily
> visited Web site (www.epic.org) that highlights the "latest news"
> concerning privacy and civil liberties issues.  The site also features
> scanned images of documents EPIC obtains under the FOIA.  Second,
> EPIC publishes a bi-weekly electronic newsletter that is distributed to over
> 15,000 readers, many of whom report on technology issues for major news
> outlets.  The newsletter reports on relevant policy developments of a
> timely nature (hence the bi-weekly publication schedule).  It has been
> published continuously since 1996, and an archive of past issues is
> available at our web site.  Finally, EPIC publishes and distributes printed
> books that address a broad range of privacy, civil liberties and technology
> issues.  A list of EPIC publications is available at our web site.

*Id*. at 3.

Plaintiff further supported its assertion that it is "primarily engaged in

disseminating information" within the meaning of DOJ regulations and the FOIA by

noting that

> the U.S. District Court for the District of Columbia has specifically held
> that EPIC is "primarily engaged in disseminating information" for the
> purposes of expedited processing, *American Civil Liberties Union v.
> Department of Justice*, 321 F. Supp. 2d 24, 29 n.5 (D.D.C. 2004), and is a
> "representative of the news media" for fee waiver purposes*, Electronic
> Privacy Information Center v. Department of Defense*, 241 F. Supp. 2d 5
> (D.D.C. 2003).

*Id*.

### C. FBI's Refusal to Recognize Plaintiff's Entitlement to Expedited Processing

By letter dated October 1, 2004, the FBI refused to grant plaintiff expedited

processing of its FOIA request.  Exhibit 3 (attached to Hofmann Decl.).  Explaining its

basis for denying plaintiff's request, the FBI stated, "[b]ased on the information you have

provided, I cannot find that there is a particular urgency to inform the public about an

actual or alleged federal government activity beyond the public's right to know about

government activity generally." *Id*.  The FBI also stated, "the primary activity of the

American Civil Liberties Union [sic] is not information dissemination, which is required

for a requester to qualify for expedited processing under this standard." *Id*.

## ARGUMENT

The issues raised in this motion are simple and not subject to serious dispute.  In

compliance with the FOIA and applicable DOJ regulations, plaintiff requested expedited

processing of a request seeking information about how the FBI maintains information in

the TSDB.  Plaintiff submitted specific and relevant information that clearly established

its entitlement to expedited processing.  In clear contravention of the law, the FBI flouted

statutory and regulatory requirements by denying plaintiff's request for expedited

processing.  The agency's position constitutes a continuing impediment to plaintiff's

legal right to examine how the FBI will maintain the privacy of personal information

within or compared to information in the TSDB.  The agency's action is clearly unlawful

and should be enjoined.

## I.  The Court has Jurisdiction to Grant the Requested Relief

The Court's jurisdiction to consider this matter and grant appropriate relief is

clear.  The FOIA provides, in pertinent part:

> Agency action to deny or affirm denial of a request for expedited
> processing . . . shall be subject to judicial review under paragraph (4),
> except that the judicial review shall be based on the record before the
> agency at the time of the determination.

5 U.S.C. § 552(a)(6)(E)(iii).  The referenced judicial review provision states, in pertinent

part:

> On complaint, the district court of the United States . . . in the District of
> Columbia, has jurisdiction to enjoin the agency from withholding agency
> records and to order the production of any agency records improperly
> withheld from the complainant.  In such a case the court shall determine
> the matter de novo . . . .

5 U.S.C. § 552(a)(4)(B).  *See Al-Fayed v. CIA*, 254 F.3d 300, 304 (D.C. Cir. 2001).[3]

Plaintiff's claim is ripe for adjudication, as all applicable administrative remedies have been exhausted.  This Court has expressly held that a party seeking expedited processing of an FOIA request may seek judicial review of an agency denial of expedition without first submitting an administrative appeal of such denial. *See, e.g.*, *Al-Fayed v. CIA*, C.A. No. 00-2092, 2000 U.S. Dist. LEXIS 21476, at **7-8 (D.D.C. Sept. 20, 2000), *aff'd on other grounds*, 254 F.3d 300 (D.C. Cir. 2001) ("Nothing in the statute or its legislative history . . . mandates administrative appeals for all denials of expedited processing before an applicant may seek judicial review."); *American Civil Liberties Union v. Dep't of Justice*, 321 F. Supp. 2d 24, 28 (D.D.C. 2004) (administrative appeal is not a "prerequisite for judicial review," thus "plaintiffs' failure to appeal the FBI's refusal to expedite their request does not preclude judicial review of the decision") (emphasis omitted); *Electronic Privacy Information Center v. Dep't of Justice*, 322 F. Supp. 2d 1, 7 (D.D.C. 2003), *appeal docketed*, No. 04-5063 (D.C. Cir. Feb. 27, 2004) (holding that EPIC was not required to submit an administrative appeal of DOJ's adverse determination on expedited processing before seeking judicial review).

As the FOIA provides, in reviewing the FBI's actions, "the court shall determine the matter *de novo*."  5 U.S.C. § 552(a)(4)(B); *see also Al-Fayed*, 254 F.3d at 308 ("[A]

---

[3] This Court also has jurisdiction of this case under 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction over all civil actions arising under the Constitution, laws, or treaties of the United States.").

district court must review *de novo* an agency's denial of a request for expedition under

FOIA.").

**II.**    <u>**Plaintiff is Entitled to Entry of a Temporary Restraining Order and a**</u>
       <u>**Preliminary Injunction**</u>

In considering plaintiff's request for the entry of a temporary restraining order and

preliminary injunction compelling defendant DOJ to grant plaintiff "news media" fee

status and expedite the processing of plaintiff's FOIA request, the court must assess

"[t]he familiar factors affecting the grant of preliminary injunctive relief — 1) likelihood

of success on the merits, 2) irreparable injury to the plaintiff, 3) burden on . . . others'

interests, and 4) the public interest." *Jacksonville Port Auth. v. Adams*, 556 F.2d 52, 57

(D.C. Cir. 1977) (citing *Virginia Petroleum Jobbers Ass'n v. FPC*, 259 F.2d 921, 925

(D.C. Cir. 1958), and *A Quaker Action Group v. Hickel*, 421 F.2d 1111, 1116 (D.C. Cir.

1969)). Consideration of these factors in this case firmly establishes plaintiff's

entitlement to injunctive relief.

**A.**   <u>**Plaintiff is Likely to Prevail on the Merits**</u>

Given the clarity of plaintiff's entitlement to expedited processing of its request,

plaintiff's likelihood of prevailing on the merits is extremely high. In assessing

plaintiff's likelihood of success, the Court must consider the merits of one discrete issue:

whether plaintiff has satisfied the statutory and regulatory criteria for expedited

processing. Plaintiff is likely to prevail on this issue.

**1.**  <u>**The "Urgency to Inform" Standard**</u>

The FOIA provides that "[e]ach agency shall promulgate regulations . . .

providing for expedited processing of requests for records . . . in cases in which the

person requesting the records demonstrates a compelling need and . . . in other cases

9

determined by the agency." 5 U.S.C. § 552(a)(6)(E)(i). "Compelling need" includes, "with respect to a request made by a person primarily engaged in disseminating information, urgency to inform the public concerning actual or alleged Federal Government activity." 5 U.S.C. § 552(a)(6)(E)(v).

Pursuant to the statutory directive, DOJ issued regulations establishing four grounds for expedited processing, only one of which is relevant here. That provision states that "requests . . . will be taken out of order and given expedited treatment whenever it is determined that they involve . . . [a]n urgency to inform the public about an actual or alleged federal government activity, if made by a person primarily engaged in disseminating information." 28 C.F.R. § 16.5(d)(1)(ii). Plaintiff provided the FBI with clear evidence of its entitlement to expedited processing under the "urgency to inform" standard set forth in the agency's regulations.

## 2. Plaintiff's Request Meets the "Urgency to Inform" Standard

Plaintiff satisfies the first prong of the "urgency to inform" standard because it is "primarily engaged in disseminating information" within the meaning of the FOIA and DOJ regulations. This Court has expressly "conclude[d] that EPIC is indeed 'primarily engaged in disseminating information' for the purposes of expediting [a FOIA] request." *American Civil Liberties Union*, 321 F. Supp. 2d at 29 n.5 (citing *Electronic Privacy Information Center v. Dep't of Defense*, 241 F. Supp. 2d 5, 15 (D.D.C. 2003) (holding that EPIC qualifies as a "news media" requester under the FOIA's fee provisions)). Given that both EPIC and defendant DOJ were parties in *American Civil Liberties Union*, the doctrine of *res judicata* should bar any attempt by DOJ to litigate the issue again in this case. *See generally Allen v. McCurry,* 449 U.S. 90, 94 (1980); *Parklane Hosiery Co.*

*v. Shore*, 439 U.S. 322 (1979).

Notwithstanding the FBI's claim that the "primary activity" of plaintiff is "not information dissemination," plaintiff unquestionably qualifies as the type of requester entitled to expedited processing.  In its FOIA request, plaintiff demonstrated to the FBI that it systematically disseminates information to the public through several means. Plaintiff maintains a heavily visited web site that highlights the "latest news" concerning privacy and civil liberty issues.  For eight years plaintiff has published a bi-weekly electronic newsletter that is distributed to over 15,000 readers, many of whom report on technology issues for major news outlets.  Plaintiff also publishes and distributes printed books that address a broad range of privacy, civil liberties and technology issues.  Exhibit 2 at 3.  Plaintiff further pointed out in its request that this Court determined just four months ago that plaintiff "is indeed 'primarily engaged in disseminating information' for the purposes of expediting [a FOIA] request."  *Id*. (citing *American Civil Liberties Union v. Dep't of Justice*, 321 F. Supp. 2d at 29 n.5).  Plaintiff demonstrated beyond a shadow of a doubt that it is "primarily engaged in disseminating information" within the meaning of the FOIA, DOJ regulations, and this Court's recent case law.  The FBI's refusal to recognize this fact flies in the face of this Court's established precedent.

Plaintiff has also demonstrated beyond question that its FOIA request pertains to a matter about which there is an "urgency to inform the public concerning actual or alleged federal government activity."  The D.C. Circuit has held that

> in determining whether requestors have demonstrated "urgency to inform," and hence "compelling need," courts must consider at least three factors: (1) whether the request concerns a matter of current exigency to the American public; (2) whether the consequences of delaying a response would compromise a significant recognized interest; and (3) whether the request concerns federal government activity.

*Al-Fayed*, 254 F.3d at 310.  All three factors are satisfied here.

First, plaintiff's request for information regarding the TSDB clearly "concerns a matter of current exigency to the American public."  The D.C. Circuit has held that, to meet that test, a requester must show "substantial interest, either on the part of the American public or the media," evidenced by "news reports."  *Id.* at 311.  Plaintiff amply demonstrated that its FOIA request implicates serious questions about use of the TSDB within Secure Flight that have received considerable news media attention.  In its September 30, 2004 request letter, plaintiff provided the FBI with the first page of a list of 213 news articles from across the country reporting on Secure Flight and the FBI's role in administering the program.  Exhibit 2 at 5.  This single page included stories published by, among other news outlets, the Chicago Tribune, Boston Globe, USA Today, and CNN.  *Id.*  Plaintiff thus demonstrated that the use of the TSDB in Secure Flight is unquestionably a matter of "current exigency to the American public."

Second, it is clear that "the consequences of delaying a response would compromise a significant recognized interest."  *Al-Fayed*, 254 F.3d at 310.  As an article plaintiff cited to the FBI in its FOIA request points out, "[j]ust like the now-defunct CAPPS II program that preceded it, the new plan, dubbed Secure Flight, raises quite legitimate privacy concerns."  Editorial, *Flight Risk*, Baltimore Sun, Sept. 23, 2004, at 16A.  Disclosure of information about how this program operates and will safeguard privacy is important for reasons other than merely the "public's right to know."  *Cf. Al-Fayed*, 254 F.3d at 310.

The disclosure of information about the TSDB is particularly urgent now because, as plaintiff noted in its request, the public has been invited to respond to TSA's plans for

testing Secure Flight until October 25, 2004.  Any delay in the disclosure of these

documents will compromise the ability of plaintiff and the public at large to submit

informed and meaningful comments in response to TSA's System of Records notice.

Furthermore, it is vital that lawmakers, as well as their constituents, be as

informed as possible about the use of the TSDB within Secure Flight.  Indeed, this Court

recently recognized that the disclosure of material that would "inform" the debate on

relevant and timely Congressional deliberations, when there is demonstrated

"newsworthiness" in the underlying issue, is "more than sufficient to satisfy" the

"urgency to inform" standard.  *American Civil Liberties Union*, 321 F. Supp. 2d at 31.

Plaintiff has been actively involved in the public debate surrounding CAPPS II and other

matters involving passenger privacy.  Hofmann Decl. ¶ 17.  In fact, the staff of the Senate

Committee on Governmental Affairs has consulted plaintiff concerning government

acquisition of passenger data and has expressed an interested in learning of any

information related to this matter plaintiff obtains as a result of its FOIA activities.

Hofmann Decl. ¶ 18.

The current and ongoing debate on the government's development of passenger

prescreening initiatives clearly would be hampered by further delay in the DOJ's

response to plaintiff's request.  The Supreme Court has long recognized our democracy's

interest in "the 'uninhibited, robust, and wide-open' debate about matters of public

importance that secures an informed citizenry."  *Cornelius v. NAACP Legal Def. & Educ.*

*Fund*, 473 U.S. 788, 815 (1985), quoting *New York Times Co. v. Sullivan*, 376 U.S. 254,

270 (1964).  *See also Board of Educ. v. Pico*, 457 U.S. 853, 876 (1982) ("[T]he

Constitution presupposes the existence of an informed citizenry prepared to participate in

governmental affairs."). This recognized interest clearly would be compromised by further delay in the disclosure plaintiff seeks.

Finally, plaintiff's request indisputably concerns Federal government activity. The requested information involves the FBI's maintenance and use of the Terrorist Screening Database to help administer Secure Flight, which is being developed by the TSA. *See* Exhibit 1.

Because plaintiff has demonstrated that it is "primarily engaged in disseminating information" and that an "urgency to inform the public" exists "concerning actual or alleged Federal Government activity," it is legally entitled to expedited processing of its FOIA request.

## B. Plaintiff Will Suffer Irreparable Injury in the Absence of the Requested Injunctive Relief

Unless the FBI's unlawful failure to expedite the processing of plaintiff's FOIA request is immediately enjoined, plaintiff will suffer irreparable harm.[4] The very nature of the right that plaintiff seeks to vindicate in this action — expedited processing — depends upon timeliness. The courts have recognized that the requisite injury is present, and preliminary injunctive relief is appropriate, in cases where "time is of the essence."

---

[4] Given the strength of plaintiff's position on the merits, even "a relatively slight showing of irreparable injury" is adequate to justify the issuance of a preliminary injunction. As the D.C. Circuit has held:

> [i]f the arguments for one factor are particularly strong, an injunction may issue even if the arguments in other areas are rather weak. An injunction may be justified, for example, where there is a particularly strong likelihood of success on the merits even if there is a relatively slight showing of irreparable injury.

*CityFed Financial Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 747 (D.C. Cir. 1995) (citation omitted). Nonetheless, plaintiff's showing of harm here is substantial.

*See, e.g.*, *United States v. BNS, Inc.*, 858 F.2d 456, 465 (9th Cir. 1988); *Martin-Marietta Corp. v. Bendix Corp.*, 690 F.2d 558, 568 (6th Cir. 1982).  Under the statutory scheme Congress established in the FOIA, it is clear that "time is of the essence" here and that any further delay in the processing of plaintiff's request will cause irreparable injury. Unless the FBI is ordered to process plaintiff's request immediately, plaintiff's right to expedition under the FOIA will be irretrievably lost.

In addition to the loss of its clearly established legal right, any further delay in the processing of plaintiff's FOIA request will irreparably harm plaintiff's ability, and that of the public, to obtain information vital to the current and ongoing debate surrounding the development of the government's latest passenger prescreening initiative.  Hofmann Decl. ¶¶ 20-23.  As this Court has noted, a private party (such as plaintiff) "suffers an injury-in-fact when . . . denied information that must be disclosed pursuant to statute." *Walker v. Cheney*, 230 F. Supp. 2d 51, 66 n.10 (D.D.C. 2002) (citing *FEC v. Akins*, 524 U.S. 11, 21 (1998) and *Pub. Citizen v. Dep't of Justice*, 491 U.S. 440, 449 (1989)).

Because time is of the essence in this matter, plaintiff will be irreparably harmed unless the Court acts now, "when it [is] still possible to grant effective relief," and before "all opportunity to grant the requested relief [is] foreclosed*." Local Lodge No. 1266, Int'l Ass'n of Machinists and Aerospace Workers v. Panoramic Corp.*, 668 F.2d 276, 290 (7th Cir. 1981).

**C. Injunctive Relief Will Not Burden Others' Interests**

Defendant DOJ cannot be said to be "burdened" by a requirement that it comply with the law.  The immediate relief plaintiff seeks will require nothing more of the government than what the law already mandates — the recognition of plaintiff's right to

"news media" status and the expedited processing of plaintiff's FOIA request.  Nor will

the requested relief burden the interests of other parties who have submitted FOIA

requests to the DOJ in any manner beyond that foreseen by Congress.  In providing for

expedited processing of qualifying requests, Congress intended that such requests would

take precedence over those that do not qualify for such treatment.  Fulfillment of the

legislative intent cannot be characterized as a burden on any party's interests.

### D. **The Public Interest Favors the Requested Relief**

The final criterion for the issuance of a preliminary injunction is clearly satisfied

in this case.  The D.C. Circuit has long recognized that "there is an overriding public

interest . . . in the general importance of an agency's faithful adherence to its statutory

mandate." *Jacksonville Port Authr.*, 556 F.2d at 59 (D.C. Cir. 1977).  Likewise, it is

"axiomatic that an 'agency is required to follow its own regulations.'" *Edmonds v. FBI*,

C.A. No. 02-1294, 2002 U.S. Dist. LEXIS 26578, at *9 n.3 (D.D.C. Dec. 3, 2002)

(quoting *Cherokee National of Okla. v. Babbitt*, 117 F.3d 1489, 1499 (D.C. Cir. 1997)).

Such adherence is all that plaintiff seeks here.  The public interest will also be served by

the expedited release of the requested records, which will further the FOIA's core

purpose of "shedding light on an agency's performance of its statutory duties." *Dep't of*

*Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. 749, 773 (1989).  As

this Court has noted, "[t]here is public benefit in the release of information that adds to

citizens' knowledge" of government activities.  *Ctr. to Prevent Handgun Violence v.*

*Dep't of the Treasury*, 49 F. Supp. 2d 3, 5 (D.D.C. 1999).  The public interest favors the

issuance of an order directing defendant to expedite the release of the requested

information.

## III.  The Court Should Order the FBI to Process Plaintiff's FOIA Request Immediately

While plaintiff recognizes that preliminary injunctive relief is not the norm in FOIA cases, plaintiff nonetheless submits that such relief is appropriate when, as in this case, an agency has denied a well-founded request for expedited processing.  Congress expressly required agencies to make determinations on such requests within ten calendar days, 5 U.S.C. § 552(a)(6)(E)(ii)(I), and provided for immediate judicial review of adverse determinations, 5 U.S.C. § 552(a)(6)(E)(iii).  The legislative mandate that disputes over expedited processing should be quickly resolved would be frustrated if aggrieved requesters were required to remain idle for twenty days after initiating suit before moving for partial summary judgment.  Fed. R. Civ. P. 56(a). As such, claims of entitlement to expedited processing are appropriately addressed through motions for preliminary relief.[5]

---

[5] In *Electronic Privacy Information Center v. Dep't of Justice*, C.A. No. 03-2078 (D.D.C. Oct. 20, 2003) (order denying preliminary injunction) (attached to Hofmann Decl. as Exhibit 4), Judge Robertson denied plaintiff's motion for a preliminary injunction, *sua sponte*, before the government had submitted a response.  Judge Robertson wrote that "[a]n injunction restraining the denial of a request . . . is a writ of mandamus" and that "[t]he showing offered by plaintiff in support of its motion does not address the quintessential element of mandamus, that the official act demanded by the movant be nondiscretionary."  Plaintiff respectfully submits that the Court's conclusion was in error. Although the Court cited no authority in its brief order, the proposition that requests for mandatory injunctions are generally judged by the same principles as requests for mandamus derives from cases that are inapposite here.  *See, e.g., Swan v. Clinton*, 100 F.3d 973, 976 n.1 (D.C. Cir. 1996) ("a request for an injunction *based on the general federal question statute* is essentially a request for a writ of mandamus") (emphasis added).  The FOIA expressly provides for grants of injunctive relief, 5 U.S.C. § 552(a)(4)(B), and the D.C. Circuit has held that agency denials of requests to expedite are subject to *de novo* review.  *Al-Fayed*, 254 F.3d at 308.  Indeed, the court of appeals in *Al-*

Likewise, the appropriate form of relief is clear.  The applicable DOJ regulations dictate the manner in which FOIA requests requiring expedition must be processed.  The regulations provide that DOJ components "ordinarily shall respond to requests according to their order of receipt," 28 C.F.R. § 16.5(a), but that requests "will be taken out of order and given expedited treatment whenever it is determined that they [meet the criteria for expedited processing]."  *Id*. § 16.5(d)(1).  "If a request for expedited treatment is granted, the request shall be given priority and shall be processed as soon as practicable."  *Id*. § 16.5(d)(4).  The Court should order defendant DOJ to grant expedited processing and take whatever steps are necessary to complete the processing of plaintiff's requests as expeditiously as possible.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for a temporary restraining order and a preliminary injunction should be granted.

Respectfully submitted,

_____

MARCIA HOFMANN
D.C. Bar No. 484136

DAVID L. SOBEL
D.C. Bar No. 360418

MARC ROTENBERG
D.C. Bar No. 422825

_____

*Fayed* applied a preliminary injunction standard and never suggested that a mandamus standard should apply to claims like the one plaintiff raises here.

ELECTRONIC PRIVACY INFORMATION
          CENTER
1718 Connecticut Avenue, N.W.
Suite 200
Washington, DC 20009
(202) 483-1140

Counsel for Plaintiff